UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL CHARLES DeFRAIA,

      Plaintiff,

    v.

CENTRAL INTELLIGENCE AGENCY,

      Defendant.

Case No. 1:16-cv-01862-RC

**DECLARATION OF ANTOINETTE B. SHINER,
INFORMATION REVIEW OFFICER,
LITIGATION INFORMATION REVIEW OFFICE,
CENTRAL INTELLIGENCE AGENCY**

I, ANTOINETTE B. SHINER, hereby declare and state:

**I. INTRODUCTION**

    1.    I currently serve as the Information Review Officer ("IRO") for the Litigation Information Review Office at the Central Intelligence Agency ("CIA" or "Agency").  I assumed this position effective 19 January 2016.

    2.    Prior to becoming the IRO for the Litigation Information Review Office, I served as the IRO for the Directorate of Support for over sixteen months.  In that capacity, I was responsible for making classification and release determinations for information originating within the Directorate of Support.  Prior to serving in the Directorate of

1

Support, I was the Deputy IRO for the Director's Area of the CIA for over three years.  In that role, I was responsible for making classification and release determinations for information originating within the Director's Area, which included, among other offices, the Office of the Director of the CIA, the Office of Congressional Affairs, the Office of Public Affairs, and the Office of General Counsel.  I have held other administrative and professional positions within the CIA since 1986, and have worked in the information review and release field since 2000.

3.   As the IRO for the Litigation Information Review Office, I am a senior CIA official and hold original classification authority at the TOP SECRET level under written delegation of authority pursuant to section 1.3(c) of Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010), reprinted in 50 U.S.C. § 3161 note ("E.O. 13526").  As such, I am authorized to assess the current, proper classification of CIA information based on the classification criteria of E.O. 13526 and applicable CIA regulations.  Among other things, I am responsible for the classification review of CIA documents and information that may be the subject of court proceedings or public requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

4.    Through the exercise of my official duties, I am
familiar with this civil action and the underlying FOIA requests
submitted to the CIA.   I make the following statements based
upon my personal knowledge and information made available to me
in my official capacity.

5.    The purpose of this declaration is to explain and
justify, to the greatest extent possible on the public record,
the CIA's actions in responding to the plaintiff's FOIA
requests.   For the Court's convenience, I have divided the
remainder of this declaration into three parts.   Part II
summarizes the plaintiff's two FOIA requests and the CIA's
responses at the administrative stage; Part III will explain the
CIA's production of documents in response to the two requests,
including any agreements between the parties that shaped the
production; and Part IV will discuss the application of FOIA
exemptions to the plaintiff's May 2015 request.   This
declaration is submitted in support of the CIA's motion for
partial summary judgment in this case.

## II.  PLAINTIFF'S FOIA REQUESTS

### A.  Plaintiff's December 2014 FOIA Request

6.    By letter dated 9 December 2014, the plaintiff
submitted a FOIA request to the CIA seeking "copies of all CIA
contracts with Bruce Jessen and James Mitchell, the 'two
psychologists' cited in the Committee Study of the Central

3

Intelligence Agency's Detention and Interrogation Program."  The plaintiff further clarified that he was requesting "all contract information between Bruce Jessen and James Mitchell as well as contracts between the CIA and Mitchell Jessen & Associates."  He also requested "any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations."  A copy of the letter is attached to this declaration as Exhibit A.

7.    By letter dated 20 January 2015, the Acting Information and Privacy Coordinator of the CIA responded that the CIA would review the plaintiff's request[1] and would advise the plaintiff if the CIA encountered any problems or could not begin the search without additional information.  The plaintiff's request was assigned the reference number F-2015-00550.  A copy of the letter is attached to this declaration as Exhibit B.

8.    By letter dated 8 May 2015, the Agency advised the plaintiff that, as to Item 3[2] of the request, it had completed a

---

[1] The Agency received two identical requests from the plaintiff, both dated 9 December 2014, so the plaintiff was advised that the requests were being consolidated into one request.
[2] Because the plaintiff's original request had multiple parts, the CIA interpreted the request as asking for five specific items: (1) all CIA contracts with Bruce Jessen; (2) all CIA contracts with James Mitchell; (3) contract information between Bruce Jessen and James Mitchell; (4) contracts between the CIA and Mitchell Jessen & Associates; and (5) any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations.

thorough review and had determined that its "record systems are not configured in a way that would allow us to perform a search reasonably calculated to lead to responsive records without an unreasonable effort," and therefore declined to process that item of the request.  The CIA also advised the plaintiff that due to the large number of FOIA requests the Agency receives, it was unlikely to respond within 20 working days, and that the plaintiff was entitled to consider this information as a denial of his request – although the Agency would continue to process the request unless he objected.  A copy of the letter is attached to this declaration as Exhibit C.

9.   By letter dated 15 June 2015, the CIA acknowledged receipt of the plaintiff's phone call to the FOIA public phone line, requesting an estimated completion date for the 9 December 2014 request.  The CIA advised that Items 1, 2, 4, and 5 of the request were still in process, and that every effort was being made to complete the request as soon as possible.  The CIA further advised that CIA personnel had checked on the status of the plaintiff's request and had been provided an estimated completion date of 12 December 2015, but that the estimated completion date was subject to change.  A copy of the letter is attached to this declaration as Exhibit D.

10.   By letter dated 28 December 2015, the CIA acknowledged receipt of the plaintiff's phone call to the FOIA public line,

requesting an estimated completion date for the 9 December 2014 request.  The CIA advised that Items 1, 2, 4, and 5 of the request were still in process, and provided an updated estimated completion date of 17 July 2016.  A copy of the letter is attached to this declaration as Exhibit E.

11.   By letter dated 13 September 2016, the plaintiff requested that the CIA provide an estimated completion date for the December 2014 FOIA request.  A copy of the letter is attached to this declaration as Exhibit F.

12.   By letter dated 14 September 2016, the CIA acknowledged receipt of the plaintiff's letter and assured the plaintiff that his request was still in process.  The CIA advised the plaintiff that CIA personnel had checked on the status of the request, and provided the plaintiff with an updated estimated completion date of 18 July 2017.  A copy of the letter is attached to this declaration as Exhibit G.

**B.  Plaintiff's May 2015 FOIA Request**

13.   By letter dated 22 May 2015, the plaintiff submitted a FOIA request to the CIA seeking five specific documents or groups of documents cited in the Executive Summary of the Senate Select Committee on Intelligence Study of the CIA's Detention and Interrogation program: (1) "[a] report titled, 'Recognizing and Developing Countermeasures to Al Qaeda Resistance to Interrogation Techniques: A Resistance Training Perspective'";

(2) "[a] CIA document faxed to the Senate Select Committee on Intelligence on March 18, 2009, cited in the Senate Intelligence Committee's report as DTS # 2009-1258...."; (3) "[a]ll emails and letters cited in footnote 1028 of the Senate Report"; (4) "[a]ll emails, letters, and reports, and other sources of information cited in footnote 1029, 1030, and 1031 of the Senate report...."; and (5) "[a]n April 1, 2002 email titled, 're: POC for [Swigert]...as stated in the Senate Report, footnote 2556." A copy of the letter is attached to this declaration as Exhibit H.

14.   By letter dated 13 July 2015, the CIA acknowledged receipt of the plaintiff's FOIA request and assigned the request reference number F-2015-01740.  The CIA advised the plaintiff that the large number of FOIA requests received by the Agency had created unavoidable delays, making it unlikely that the CIA would respond within 20 working days.  The CIA further advised the plaintiff that he was entitled to consider this information as a denial of his request and appeal to the Agency Release Panel – although the Agency would continue to process the request unless he objected.  A copy of the letter is attached to this declaration as Exhibit I.

15.   By letter dated 4 September 2015, the CIA acknowledged receipt of the plaintiff's 22 July 2015 phone call to the FOIA public phone line, requesting an estimated completion date for

the 22 May 2015 request.  The CIA assured the plaintiff that the request was still in process, and that every effort was being made to complete the request as soon as possible.  The CIA further advised that CIA personnel had checked on the status of the plaintiff's request and had been provided an estimated completion date of 28 May 2016, but that the estimated completion date was subject to change.  A copy of the letter is attached to this declaration as Exhibit J.

16.   By letter dated 22 June 2016, the CIA acknowledged receipt of the plaintiff's 8 June 2016 phone call to the FOIA public phone line, requesting an estimated completion date for the 22 May 2015 request.  The CIA assured the plaintiff that the request was still in process, and that every effort was being made to complete the request as soon as possible.  The CIA further advised that CIA personnel had checked on the status of the plaintiff's request and had been provided an estimated completion date of 12 April 2017.  A copy of the letter is attached to this declaration as Exhibit K.

17.   By letter received 8 September 2016, the plaintiff requested that the CIA provide an estimated completion date for the May 2015 FOIA request.  Thereafter, on 19 September 2016, the plaintiff initiated this action, consolidating his 9 December 2014 and 22 May 2015 FOIA requests.  A copy of the 8

September 2016 letter is attached to this declaration as Exhibit
L.

### III. THE CIA'S PRODUCTION OF RECORDS THROUGH 31 MARCH 2017

18.   After the CIA answered the Complaint on 30 November
2016, the parties began discussing an agreement concerning the
scope and timing of any production of records responsive to both
FOIA requests.   The sum and substance of that agreement is set
forth in the Joint Status Report and Proposed Briefing Schedule
("JSR"), filed with this Court on 14 December 2016.   However, I
will summarize a few of the relevant parts below.

#### A.   The December 2014 Request

19.   With respect to the 9 December 2014 request, the
parties defined the request as seeking two general categories of
information: (1) CIA contracts with Bruce Jessen and James
Mitchell and Mitchell Jessen & Associates, and (2) information
relating to Jessen and Mitchell's interactions with detainees.[3]
With respect to category (1), the parties ultimately agreed to
refine the scope of the request as seeking contracts between
"(1) the CIA and (2) Bruce Jessen and/or James Mitchell and/or
Mitchell Jessen & Associates from 2001-2009 that relate to the
CIA's rendition, detention, and interrogation program."

---

[3] At this time, the CIA anticipates being able to produce records responsive
to category (2) of the 9 December 2014 request by 30 September 2017.   As
such, my understanding is that the CIA's motion for partial summary judgment
will not address category (2) records, if any.

20.   The agreement to refine the scope of the request for
category (1) documents was shaped, in part, by the CIA's
production of documents in a civil case arising in the United
States District Court for the Eastern District of Washington –
Salim, et al. v. Mitchell, et al.  Although the CIA is not a
party to the Salim case, the Agency responded to a request from
the defendants in that case by producing "contracts between (1)
the CIA and (2) Bruce Jessen and/or James Mitchell and/or
Mitchell Jessen & Associates from 2001-2009 that relate to the
CIA's rendition, detention, and interrogation program."  In
other words, the refined request agreed to by the parties in
this matter.

21.   In the Salim case, the CIA redacted the following
categories of sensitive and privileged information from the
documents: names and contact information of CIA personnel;
personally identifying information of Mitchell and Jessen and
employees of Mitchell Jessen & Associates (e.g., social security
numbers, addresses, phone numbers, and signatures);
classification markings and codenames for CIA programs;
information concerning CIA's information systems, methods of
communication, and record systems; internal CIA administrative
information concerning the coding and processing of contracts;
names of certain CIA component offices; locations of CIA
facilities; references to CIA regulations; specific days of the

month when the contracts were signed; specific monetary amounts and hours of work designated, allocated, or requested for certain contractual activities; information concerning the CIA's foreign liaison relationships and activities in foreign countries; specific numbers of personnel needed to perform specific operational functions referenced in the contracts; information concerning CIA sources, methods, operational activity, and tradecraft; and specific items and materials required for operational training of CIA personnel.  In this case, the plaintiff agreed to receive an identical copy of the production in the Salim case, with the same information redacted.  In short, the plaintiff agreed to waive processing under the FOIA in exchange for the CIA's agreement to produce a copy of what had been produced in the Salim case by 30 December 2016.

22.   Pursuant to the JSR and the agreement between the parties, the CIA produced the records responsive to category (1) on 22 December 2016.  The only information withheld from the documents was information that fell within the categories of information identified in the JSR and agreed to by the parties.  Although the agreement between the parties preserved the right of the plaintiff to request that the CIA produce certain redacted material in response to the initial production – with the CIA given the option to invoke FOIA - the plaintiff declined

11

to challenge any of the redactions to the category (1) material.
As such, my understanding is that any withholdings in the
category (1) batch of records are not otherwise at issue in the
CIA's motion for partial summary judgment.

**B.  The 22 May 2015 Request**

23.   With respect to the 22 May 2015 request, the parties
agreed that the request would be processed under the FOIA.
Accordingly, the CIA conducted a search for the records
specifically identified by the plaintiff in his 22 May 2015
request and located 13 documents.  On 31 March 2017, the CIA
produced 12 of the 13 responsive records, withholding one six-
page document in full.  The production included a total of 55
pages – with redactions made pursuant to FOIA Exemptions (b)(1),
(b)(3), (b)(5), and (b)(6).  The CIA's application of FOIA
exemptions to the records responsive to the 22 May 2015 request
will be addressed in Section IV.

**IV. APPLICATION OF FOIA EXEMPTIONS – 22 MAY 2015 REQUEST**

**A. Exemption (b)(1)**

24.   Exemption (b)(1) provides that the FOIA does not
require the production of records that are:  "(A) specifically
authorized under criteria established by an Executive order to
be kept secret in the interest of national defense or foreign

policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).

25.   As stated above, I hold original classification authority at the TOP SECRET level in accordance with E.O. 13526, which authorizes me to conduct classification reviews and to make original classification decisions.  Consistent with Section 1.1(a) of E.O. 13526, and as described below, I have determined that discrete portions of the responsive records are currently and properly classified and therefore exempt from disclosure pursuant to Exemption (b)(1).  The classified information at issue is owned by, produced by or for, or under the control of the United States government, and concerns "intelligence activities (including covert action), [or] intelligence sources or methods" and "foreign relations or foreign activities of the United States, including confidential sources" within the meaning of Sections 1.4(c) and 1.4(d) of E.O. 13526.  Further, unauthorized disclosure of the information redacted under Exemption (b)(1) reasonably could be expected to result in damage to the national security.[4]  In the paragraphs that follow, I will briefly describe the classified information withheld and

---

[4] My determination that discrete portions of the requested records are classified has not been made to conceal violations of law, inefficiency, or administrative error; to prevent embarrassment to a person, organization, or agency; to restrain competition; or to prevent or delay the release of information that does not require protection in the interests of national security.

the harm that would be occasioned by its unauthorized
disclosure.

26.    Dr. James Mitchell and Dr. Bruce Jessen were
contractors employed by the CIA to assist in interrogating CIA
detainees under the CIA's former detention and interrogation
program.  The focus of the program was to collect intelligence
from high value detainees, such as senior al-Qaida members and
other terrorists thought to have knowledge of active terrorist
plots to murder American citizens.

27.    Over time, certain information about the CIA's former
detention and interrogation program has been officially
declassified and publicly released – the Executive Summary of
the Senate Select Committee on Intelligence Study of the CIA's
Detention and Interrogation program represents the most
prominent example.  However, many details surrounding the
program remain highly classified due to the damage to national
security that reasonably could be expected to result if specific
information were disclosed to unauthorized persons.  In this
case, Exemption (b)(1) has been asserted in the responsive
records to protect the following general categories of
information: (1) information that could identify individuals
involved in the program; (2) information regarding foreign
government cooperation with the CIA; (3) information pertaining
to the operation or location of any clandestine overseas CIA

station, base, or detention facility; (4) information regarding the capture and/or transfer of detainees; (5) intelligence information about detainees and terrorist organizations, to include intelligence obtained or discussed in debriefing or interrogation sessions; (6) information concerning CIA intelligence sources and methods, as well as specific intelligence operations; and (7) information concerning the CIA's internal structure and administration.

28.    I have determined that disclosure of the general categories of information described above reasonably could be expected to cause damage to the national security.  For example, with respect to information that could identify individuals involved in the program, the CIA does not ordinarily disclose the identity and Agency affiliation of its employees, regardless of whether or not they are under cover.  Such employees may have served in sensitive positions or been involved in sensitive operations, may be doing so now, or may do so in the future. The CIA undertakes substantial efforts to protect its officers from exposure that could compromise their safety and the CIA's intelligence gathering mission.  Revealing the names of those individuals who were involved in the program would likely jeopardize the safety of these officers and their families, and potentially the human intelligence sources who have met with these officers over the course of their careers.  Additionally,

future officers may be less willing to accept dangerous job assignments if the CIA is unable or unwilling to protect their identities, significantly impairing the CIA's ability to conduct its clandestine intelligence mission.

29.   As noted above, the CIA also withheld information pertaining to the operation or location of clandestine CIA stations, bases, or detention facilities.  The CIA's overseas facilities are critical to the CIA's mission, as they provide a base for foreign intelligence activities.  Acknowledging the location of such facilities can endanger the physical safety of covert CIA officers who work at these locations by, among other things, significantly increasing the likelihood that those facilities could be targeted for terrorist attacks.  Disclosing the existence of CIA facilities in specific countries is also reasonably likely to cause complications for the host country, given that official acknowledgment of a CIA facility within their borders could result in a backlash from elements of their citizenry.  Public embarrassment for a host country could also negatively impact the CIA's relationship with that country's intelligence or security service, resulting in curtailed intelligence sharing and cooperation that would greatly diminish the CIA's intelligence collection.

30.   Additionally, the CIA also withheld intelligence information about detainees and terrorist organizations, to

16

include intelligence obtained or discussed in debriefing or interrogation sessions.  The CIA collected a significant amount of intelligence about suspected terrorists and their organizations that is referred to and discussed in the responsive records in this case (e.g., C06606419 and C06656059). Revealing the content and sources of the CIA's intelligence collection on individual terrorists and organizations reasonably could be expected to harm the national security by disclosing what the CIA knew and did not know about them at a specific time – thereby assisting our adversaries in their efforts to counter CIA's intelligence collection.

31.    In short, the effective collection and analysis of intelligence requires the Agency to prevent the disclosure of information to our adversaries that would reveal details about the CIA's intelligence activities, sources, and methods. Clandestine intelligence activities lie at the heart of the CIA's mission.  Terrorist organizations, foreign intelligence services, and other hostile groups use information regarding the CIA's specific intelligence activities to thwart CIA operations and to attack the United States and its interests.

32.    For these reasons, I have determined that discrete portions of the responsive records are currently and properly classified.  The information concerns intelligence activities, sources, methods, and foreign relations or foreign activities

17

under Sections 1.4(c) and (d) of the Executive Order, and thus is exempt from disclosure under FOIA Exemption (b)(1).

**B. Exemption (b)(3) – National Security Act**

33.   Exemption (b)(3) allows the withholding of information prohibited from disclosure by another federal statute, provided that such statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).

34.   Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 3024 (the "National Security Act"), provides that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure."  Accordingly, the National Security Act has been widely recognized as a withholding statute under Exemption (b)(3) in that it refers to particular types of matters to be withheld, and "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue."  5 U.S.C. § 552(b)(3).  Under the direction of the Director of National Intelligence pursuant to Section 102A, and consistent with Section 1.6(d) of E.O 12333, the Director of the CIA is authorized to protect CIA sources and

18

methods from unauthorized disclosure.[5]  As demonstrated above,
the classified information withheld in the responsive records
concerns intelligence sources and methods, which the National
Security Act is designed to protect.  Therefore, FOIA Exemptions
(b)(1) and (b)(3) apply independently and co-extensively to the
classified information withheld in the records responsive to the
plaintiff's 22 May 2015 FOIA request.

35.    Additionally, the National Security Act has been
asserted to protect certain classification markings, which are
among the intelligence methods used to control the dissemination
of intelligence-related information and protect it from
unauthorized disclosure.  These markings indicate the overall
classification level, the presence of any compartmented
information, and the limits on disseminating the information,
which, in turn, would reveal details about the sourcing,
sensitivity, and content of the underlying intelligence and
indicate restrictions on access and handling.  Disclosure of
these markings would reveal or highlight areas of particular
intelligence interest, sensitive collection sources or methods,

---

[5] Section 1.6(d) of Executive Order 12333, as amended, 3 C.F.R. 200 (1981),
*reprinted in* 50 U.S.C. 3001 note at 25(formerly codified at 50 U.S.C.A. § 401
note at 25 (West Supp. 2009)), and as amended by Executive Order 13470, 73
Fed. Reg. 45,323 (July 30, 2008) requires the Director of the Central
Intelligence Agency to "[p]rotect intelligence and intelligence sources,
methods, and activities from unauthorized disclosure in accordance with
guidance from the [DNI][.]"

foreign sensitivities, and procedures for gathering, protecting, and processing intelligence.

36.     In contrast to E.O. 13526, the National Security Act does not require the CIA to identify and describe the damage to national security that reasonably could be expected to result should the CIA disclose the type of information described above. However, the release of this information could significantly impair the CIA's ability to carry out its core missions by exposing intelligence sources and methods.  Disclosure of this information is prohibited by statute and having reviewed the material, I find it to be properly exempt from disclosure under the National Security Act.

**C. Exemption (b)(3) — CIA Act**

37.     The CIA has also invoked Section 6 of the Central Intelligence Agency Act of 1949, as amended, 50 U.S.C. § 3507 (the "CIA Act"), in conjunction with Exemption (b)(3).  The CIA Act provides that the CIA shall be exempted from the provisions of "any other law" (in this case, FOIA) that "require[s] publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."  50 U.S.C. § 3507.  Pursuant to the CIA Act, the CIA has withheld the names, titles, identification numbers, and contact information of CIA employees, as well as numbers of personnel.  Although this statute does not require the Agency to

20

establish damage to national security, I note that disclosure of this information would disclose the identities of CIA officers, which would interfere with the Agency's ability to carry out its core mission.

**D. Exemption (b)(5) — Deliberative Process Privilege**

38.     Exemption (b)(5) provides that the FOIA's disclosure requirements do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  As a preliminary matter, the documents for which Exemption (b)(5) were asserted have been circulated within the Agency and therefore satisfy the intra-agency threshold of the exemption.

39.     The Agency asserted Exemption (b)(5) to withhold portions of Documents C06673769, C06673772, C06674722, and C06674723 based on the deliberative process privilege.  The deliberative process privilege protects Agency communications that are pre-decisional and deliberative in order to prevent injury to the quality of agency decision-making.

40.     For example, C06674723, which was withheld in full pursuant to Exemptions (b)(1), (b)(3), and (b)5), includes comments and recommendations, and as well as discussions about proposals, potential resource allocation, and other deliberative ancillary matters.  These communications do not convey final

Agency viewpoints on a particular matter, but rather reflect different considerations, opinions, options, and approaches that preceded an ultimate decision or are part of a policy-making process.  Although no showing of harm is required for invoking the deliberative process privilege, disclosure of deliberative process privileged information would inhibit the frank communications and free exchange of ideas that the privilege is designed to protect.

### E. Exemption (b)(6)

41.    In addition to withholding the names of CIA officers pursuant to the CIA Act, the CIA has also asserted Exemption (b)(6) to withhold CIA officers' names.  The disclosure of this information would constitute a clearly unwarranted invasion of personal privacy and has been properly withheld under Exemption (b)(6).

## V. SEGREGABILITY

42.    In evaluating the responsive documents, the CIA conducted a document-by-document and line-by-line review and released all reasonably segregable non-exempt information. After reviewing all of the records at issue, I have determined that no additional information can be released without jeopardizing classified, statutorily protected, or privileged information that falls within the scope of one or more FOIA exemptions.

\*        \*        \*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22nd day of May 2017.

ANTOINETTE B. SHINER
Information Review Officer
Litigation Information Review Office
Central Intelligence Agency

23

**EXHIBIT A**

F-2015-00550

DEC 10 2014

FOIA Request ID: 62

FOIA Request submitted by:

Mr. Daniel DeFraia

Submitted on: December 9, 2014 : 15:53 - America/New_York

Boston University

(845) 901 - 0688

15 Oak Street

Somerville, MA 02143

United States

Request:

Dear FOIA Officer:

Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, I request access to and copies of all CIA contracts with Bruce Jessen and James Mitchell, the &quot;two psychologists&quot; cited in the Committee Study of the Central Intelligence Agency&#039;s Detention and Interrogation Program. According to the Senate Intelligence report, the CIA gave a contract to Jessen and Mitchell in the amount of about $180 million. I request all contract information between Bruce Jessen and James Mitchell as well as contracts between the CIA and Mitchell Jessen &amp; Associates. The company was formed in 2005. I am also requesting any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations. The Senate Intelligence report states that two psychologists &quot;conducted interrogations&quot; and assessed detainees&#039; psychological state.
I would like to receive the information in In a thumb drive.

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

I look forward to your reply within 20 business days, as the statute requires.

Thank you for your assistance.

Sincerely,

Daniel DeFraia

Fee Waiver:

Please waive any applicable fees. Release of the information is in the public interest because it will contribute significantly to public understanding of government operations and activities regarding the CIA Detention and Interrogation Program. The public has demonstrated a deep interest in the CIA program, and information regarding its formation and activities will allow the public to better understand how CIA has tried to serve the public's interest in its attempt to combat terrorism around the world.

**<u>EXHIBIT B</u>**

Central Intelligence Agency



Washington, D.C. 20505

20 January 2015

Mr. Daniel DeFraia
Boston University
15 Oak Street
Somerville, MA  02143

Reference:  F-2015-00550

Dear Mr. DeFraia:

On 10 December 2014, the office of the Information and Privacy Coordinator received your two 9 December 2014 Freedom of Information Act (FOIA) requests for access to and copies of **all CIA contracts with Bruce Jessen and James Mitchell. [You] request all contract information between Bruce Jessen and James Mitchell as well as contracts between the CIA and Mitchell Jessen & Associates. [You] are also requesting any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations.**

Our officers will review your requests and will advise you should they encounter any problems or if they cannot begin the search without additional information.  Since the subject of both requests is identical, they have been consolidated into one, and we have assigned your requests the reference number above.  Please use this number when corresponding so that we can identify it easily.

Sincerely,

John Giuffrida
Acting Information and Privacy Coordinator

**<u>EXHIBIT C</u>**

Central Intelligence Agency



Washington, D.C. 20505

8 May 2015

Mr. Daniel DeFraia
Boston University
15 Oak Street
Somerville, MA  02143

Reference:  F-2015-00550

Dear Mr. DeFraia:

     This is further to our 20 January 2015 letter regarding your two 9 December 2014 Freedom of Information Act (FOIA) requests, for access to and copies of the following:

1. **All CIA contracts with Bruce Jessen.**
2. **All CIA contracts with James Mitchell.**
3. **Contract information between Bruce Jessen and James Mitchell.**
4. **Contracts between the CIA and Mitchell Jessen and AMP, Associates.**
5. **Any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations.**

     Regarding Item 3, we have completed a thorough review of your requests and have determined that our record systems are not configured in a way that would allow us to perform a search reasonably calculated to lead to responsive records without an unreasonable effort.  The FOIA does not require federal agencies to perform research, create records or conduct unreasonable searches through a body of material to see if any of it is related to a particular request.  Therefore, we must decline to process this item of your requests.

     The CIA Information Act, 50 U.S.C. § 431, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA.  To the extent your request seeks information that is subject to the FOIA, we accept your request, and we will process it in accordance with the FOIA, 5 U.S.C. § 552, as amended.  We will search for records up to and including the date the Agency starts its search.  In accordance with our regulations, as a matter of administrative discretion, the Agency has waived the fees for this request.

     The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires.  You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel.  A more practical approach would permit us to continue processing your request and respond to you as soon as we can.  You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish.  We will proceed on that basis unless you object.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

**<u>EXHIBIT D</u>**

Central Intelligence Agency



Washington, D.C. 20505

15 June 2015

Mr. Daniel DeFraia
Boston University
15 Oak Street
Somerville, MA  02143

Reference:  F-2014-00550

Dear Mr. DeFraia:

This acknowledges receipt of your 1 June 2015 phone call to our Freedom of Information Act (FOIA) public phone line requesting an estimated completion date concerning your two 9 December 2014 FOIA requests for access to and copies of the following:

1. **All CIA contracts with Bruce Jessen.**
2. **All CIA contracts with James Mitchell.**
3. **Contract information between Bruce Jessen and James Mitchell.**
4. **Contracts between the CIA and Mitchell Jessen and AMP, Associates.**
5. **Any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations.**

Item 3 was addressed in our letter dated 8 May 2015.  Please be assured that Items 1, 2, 4, and 5 of your request are still in process.  We can appreciate your concern with not having received a final response to your request.  It is the overwhelming number of requests and their complexity that causes delays in our responses.  We are making every effort to complete it as soon as possible.  Per your request, we have checked on the status and have been provided an estimated completion date of 12 December 2015.  Please note, this is only an estimated date and is subject to change.  In the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after 12 December 2015.  Meanwhile, we appreciate your patience and understanding while we continue to process your request.

Sincerely,

Michael Lavergne

Michael Lavergne
Information and Privacy Coordinator

**<u>EXHIBIT E</u>**

Central Intelligence Agency



Washington, D.C. 20505

28 December 2015

Mr. Daniel DeFraia
Boston University
15 Oak Street
Somerville, MA  02143

Reference:  F-2015-00550

Dear Mr. DeFraia:

This acknowledges receipt of your 17 December 2015 phone call to our Freedom of Information Act (FOIA) public phone line requesting an estimated completion date concerning your two 9 December 2014 FOIA requests for access to and copies of the following:

1. **All CIA contracts with Bruce Jessen.**
2. **All CIA contracts with James Mitchell.**
3. **Contract information between Bruce Jessen and James Mitchell.**
4. **Contracts between the CIA and Mitchell Jessen and AMP, Associates.**
5. **Any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations.**

Item 3 was addressed in our letter dated 8 May 2015.  Please be assured that Items 1, 2, 4, and 5 of your request are still in process, and we are making every effort to complete it as soon as possible.  Our records show that we provided you with a previous estimated completion date of 12 December 2015 which expired.  Therefore, we checked on the status and have been provided an updated estimated completion date of 17 July 2016.  In the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after 17 July 2016.  Meanwhile, we appreciate your patience and understanding while we continue to process your request.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

**<u>EXHIBIT F</u>**

Daniel DeFraia
728 Commonwealth Avenue, Apt. 406
Boston, MA, 02215
(845) 901 0688

SEP 1 3 2016

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Dear CIA,

Please provide me with an estimated completion date for my FOIA request, # F-2015-00550.

Sincerely,

Daniel DeFraia
DanDeFraia@gmail.com
(845) 901 0688

**<u>EXHIBIT G</u>**

Central Intelligence Agency



Washington, D.C. 20505

14 September 2016

Mr. Daniel DeFraia
728 Commonwealth Avenue
Apartment 406
Boston, MA  02215

Reference:  F-2015-00550

Dear Mr. DeFraia:

This acknowledges receipt of your 13 September 2016 letter, received in the office of the Information and Privacy Coordinator on 13 September 2016, for an estimated completion date concerning your two 9 December 2014 Freedom of Information Act requests for access to and copies of the following:

1. **All CIA contracts with Bruce Jessen.**
2. **All CIA contracts with James Mitchell.**
3. **Contract information between Bruce Jessen and James Mitchell.**
4. **Contracts between the CIA and Mitchell Jessen and AMP, Associates.**
5. **Any and all information related to Bruce Jessen and James Mitchell and their interaction with detainees, including interrogations.**

Please be assured that your request is still in process, and we are making every effort to complete it as soon as possible. Our records show that we provided you with a previous estimated completion date of 17 July 2016 which expired.  Therefore, we checked on the status and have been provided an updated estimated completion date of 18 July 2017.  In the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after 18 July 2017.  Meanwhile, we appreciate your patience and understanding while we continue to process your request.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

**<u>EXHIBIT H</u>**

FOIA Request ID: 60

F-2015.01740

FOIA Request submitted by:

Mr. Daniel DeFraia

Submitted on: May 22, 2015 : 09:36 - America/New_York

Boston University

(845) 901 - 0688

15 Oak Street. Apt. #1

Somerville, MA 02143

MAY 2 2 2015

United States

Request:

FOIA REQUEST

Fee waiver requested

Dear FOIA Officer:

Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, I request access to and copies of:

1) The report titled, "Recognizing and Developing Countermeasures to Al Qaeda Resistance to Interrogation Techniques: A Resistance Training Perspective," written by CIA contractors James Mitchell and Bruce Jessen and cited in the Senate Intelligence Committee's report on the CIA's Detention and Interrogation Program (footnote 57) as commissioned by the CIA's Office of Technical Services (OTS).

2) A CIA document faxed to the Senate Select Committee on Intelligence on March 18, 2009, cited in the Senate Intelligence Committee's report as DTS #2009 – 1258, which provided "some of the key captures and disrupted plots" that "saved lives (See point #6 in footnote 1050 of the report).

3) All email and letters cited in footnote 1028 of the Senate Report.

4) All email, letters, and reports, and other sources of information cited in footnote 1029, 1030, and 1031 of the Senate report. especially information relating to the July 25, 2006, "Justification For Other Than Full and Open Competition, Contractor," as stated in footnote 1029.

5) An April 1, 2002 email titled, "re: POC for [Swigert] – consultant who drafted al-Qa'ida resistance to interrogation backgrounder (noting that CTC/LGL would contact SWIGERT)," as stated in the Senate Report, footnote 2556.
I would like to receive the information in a thumb drive or CD ROM.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

I look forward to your reply within 20 business days, as the statute requires.

Thank you for your assistance.

Sincerely,

Daniel DeFraia

Fee Waiver:

Please waive any applicable fees. Release of the information is in the public interest because it will contribute significantly to public understanding of government operations and activities. The CIA detention and interrogation program is, of course, a controversial program that was part of the "war on terrorism," and as such, Bruce Jessen, James Mitchell, and their company's (known in the Senate report as DUNABR, SWIGERT, and COMPANY Y, respectively) part in the program's formation, evolution, impact, and operations is clearly in the public interest of the American.

I've worked as a paid and professional journalist for the last five years, writing for news outlets, including GlobalPost and the Committee to Protect Journalists. I have a record of publication, have a reasonable expectation of publication, and therefore request a media fee waiver exemption. In addition, I'm also a PhD candidate for Boston University, where I have also published work as a journalist, and continue my research on government operations related to the CIA's interrogation and detention program.

If my request is denied in whole or part, I ask that you justify all deletions by reference to specific exemptions of the act. I will also expect you to release all segregable portions of otherwise exempt material. I, of course, reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

As I am making this request as a journalist and this information is of timely value, I would appreciate your communicating with me by telephone, rather than by mail, if you have questions regarding this request.

**<u>EXHIBIT I</u>**

Central Intelligence Agency



Washington, D.C. 20505

13 July 2015

Mr. Daniel DeFraia
Boston University
15 Oak Street
Apartment #1
Somerville, MA 02143

Reference:  F-2015-01740

Dear Mr. DeFraia:

On 22 May 2015, the office of the Information and Privacy Coordinator received your 22 May 2015 Freedom of Information Act (FOIA) request for copies of the following:

1) **The report titled, "Recognizing and Developing Countermeasures to Al Qaeda Resistance to Interrogation Techniques:  A Resistance Training Perspective."**
2) **A CIA document faxed to the Senate Select Committee on Intelligence on March 18, 2009, cited in point 6 of footnote 1050 in the Senate Intelligence Committee's report as DTS # 2009-1258.**
3) **All email and letters cited in footnote 1028 of the Senate Report.**
4) **All email, letters, and reports, and other sources of information cited in footnote 1029, 1030, and 1031 of the Senate report.**
5) **An April 1, 2002 email titled, re: POC for [SWIGERT], as stated in the Senate Report, footnote 2556.**

Please use this number when corresponding so that we can identify it easily.

The CIA Information Act, 50 U.S.C. § 431, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA.  To the extent your request seeks information that is subject to the FOIA, we accept your request, and we will process it in accordance with the FOIA, 5 U.S.C. § 552, as amended.  Unless you object, we will limit our search to CIA-originated records up to and including the date the Agency starts its search.  In accordance with our regulations, as a matter of administrative discretion, there is no charge for processing your request.

The large number of FOIA requests CIA receives has created unavoidable delays making it unlikely that we can respond within the 20 working days the FOIA requires.  You have the right to consider our honest appraisal as a denial of your request and you may appeal to the Agency Release Panel.  A more practical approach would permit us to continue processing your request and respond to you as soon as we can.  You will retain your appeal rights and, once you receive the results of our search, can appeal at that time if you wish.  We will proceed on that basis unless you object.

Sincerely,

Michael Lavergne

Michael Lavergne
Information and Privacy Coordinator

**<u>EXHIBIT J</u>**

Central Intelligence Agency



Washington, D.C. 20505

4 September 2015

Mr. Daniel DeFraia
Boston University
15 Oak Street
Apartment #1
Somerville, MA 02143

Reference: F-2015-01740

Dear Mr. DeFraia:

This in response to your 22 July 2015 call to the Freedom of Information Act (FOIA) hotline for the status or an estimated completion date concerning your 22 May 2015 FOIA request for **copies of the following:**

1) **The report titled, "Recognizing and Developing Countermeasures to Al Qaeda Resistance to Interrogation Techniques: A Resistance Training Perspective."**
2) **A CIA document faxed to the Senate Select Committee on Intelligence on March 18, 2009, cited in point 6 of footnote 1050 in the Senate Intelligence Committee's report as DTS # 2009-1258.**
3) **All email and letters cited in footnote 1028 of the Senate Report.**
4) **All email, letters, and reports, and other sources of information cited in footnote 1029, 1030, and 1031 of the Senate report.**
5) **An April 1, 2002 email titled, "re: POC for [SWIGERT]," as stated in the Senate Report, footnote 2556.**

Please be assured that your request is still in process. We can appreciate your concern with not having received a final response to your request. It is the overwhelming number of requests and their complexity that causes delays in our responses. We are making every effort to complete it as soon as possible. Per your request, we have checked on the status and have been provided an estimated completion date of 28 May 2016. Please note, this is only an estimated date and is subject to change. In the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after 28 May 2016. Meanwhile, we appreciate your patience and understanding while we continue to process your request.

Sincerely,

*Michael Lavergne*

Michael Lavergne
Information and Privacy Coordinator

**<u>EXHIBIT K</u>**

Central Intelligence Agency



Washington, D.C. 20505

22 June 2016

Mr. Daniel DeFraia
Boston University
15 Oak Street
Apartment #1
Somerville, MA 02143

Reference: F-2015-01740

Dear Mr. DeFraia:

   This acknowledges our 8 June 2016 phone conversation on the Freedom of Information Act (FOIA) hotline wherein you requested an updated estimated date of completion regarding your 22 May 2015 FOIA request for **copies of the following:**

1)  **The report titled, "Recognizing and Developing Countermeasures to Al Qaeda Resistance to Interrogation Techniques: A Resistance Training Perspective."**
2)  **A CIA document faxed to the Senate Select Committee on Intelligence on March 18, 2009, cited in point 6 of footnote 1050 in the Senate Intelligence Committee's report as DTS # 2009-1258.**
3)  **All email and letters cited in footnote 1028 of the Senate Report**
4)  **All email, letters, and reports, and other sources of information cited in footnote 1029, 1030, and 1031 of the Senate report.**
5)  **An April 1, 2002 email titled, "re: POC for [SWIGERT]," as stated in the Senate Report, footnote 2556.**

   Please be assured that your request is still in process, and we are making every effort to complete it as soon as possible. Our records show that we provided you with a previous estimated completion date of 28 May 2016 which expired. Therefore, we checked on the status and have been provided an updated estimated completion date of 12 April 2017. In the future, we will not acknowledge or respond to any additional queries regarding the status of this request until after 12 April 2017. Meanwhile, we appreciate your patience and understanding while we continue to process your request.

                    Sincerely,

                    Michael Lavergne

                    Michael Lavergne
                    Information and Privacy Coordinator

**<u>EXHIBIT L</u>**

SEP 0 8 2016

Daniel DeFraia
728 Commonwealth Avenue, Apt. 406
Boston, MA, 02215
(845) 901 0688

Information and Privacy Coordinator
Central Intelligence Agency
Washington, D.C. 20505

Dear CIA,

Please provide me with an estimated completion date for my FOIA request, # F-2015-01740.

Sincerely,

Daniel DeFraia
DanDeFraia@gmail.com
(845) 901 0688